1 │ TRACY L. WILKISON
  │ Acting United States Attorney
2 │ SCOTT M. GARRINGER
  │ Assistant United States Attorney
3 │ Chief, Criminal Division
  │ SCOTT PAETTY (Cal. Bar No. 274719)
4 │ CATHERINE AHN (Cal. Bar No. 248286)
  │ BRIAN FAERSTEIN (Cal. Bar No. 274850)
5 │ Assistant United States Attorneys
  │ Major Frauds/Environmental and Community Safety Crimes Sections
6 │     1100/1300 United States Courthouse
  │     312 North Spring Street
7 │     Los Angeles, California 90012
  │     Telephone: (213) 894-6527/2424/3819
8 │     Facsimile: (213) 894-6269/0141
  │     E-mail:    Scott.Paetty@usdoj.gov
9 │                Catherine.S.Ahn@usdoj.gov
  │                Brian.Faerstein@usdoj.gov
10 │
  │ DANIEL S. KAHN
11 │ Acting Chief, Fraud Section
  │ Criminal Division, U.S. Department of Justice
12 │ CHRISTOPHER FENTON
  │ Trial Attorney, Fraud Section
13 │ Criminal Division, U.S. Department of Justice
  │     1400 New York Avenue NW, 3rd Floor
14 │     Washington, DC 20530
  │     Telephone: (202) 320-0539
15 │     Facsimile: (202) 514-0152
  │     E-mail:   Christopher.Fenton@usdoj.gov
16 │
  │ Attorneys for Plaintiff
17 │ UNITED STATES OF AMERICA

18 │                UNITED STATES DISTRICT COURT

19 │           FOR THE CENTRAL DISTRICT OF CALIFORNIA

20 │ UNITED STATES OF AMERICA,              No. CR 20-579(A)-SVW

21 │          Plaintiff,                    GOVERNMENT'S MEMORANDUM IN
  │                                         OPPOSITION TO MOTION TO DISMISS
22 │            v.                          UNDER FED. R. CRIM. P. 12(B) OR
  │                                         CONTINUE THE TRIAL TO HOLD A PRE-
23 │ RICHARD AYVAZYAN,                      TRIAL KASTIGAR HEARING
  │    aka "Richard Avazian" and
24 │       "Iuliia Zhadko,"
  │ MARIETTA TERABELIAN,
25 │    aka "Marietta Abelian" and
  │       "Viktoria Kauichko,"
26 │ ARTUR AYVAZYAN,
  │    aka "Arthur Ayvazyan," and
27 │ TAMARA DADYAN,
  │ MANUK GRIGORYAN,
28 │    aka "Mike Grigoryan," and

1    "Anton Kudiumov,"
ARMAN HAYRAPETYAN,
2   EDVARD PARONYAN,
      aka "Edvard Paronian" and
3        "Edward Paronyan," and
VAHE DADYAN,
4
              Defendants.
5

6        Plaintiff United States of America, by and through its counsel

7   of record, the Acting United States Attorney for the Central District

8   of California, Assistant United States Attorneys Scott Paetty,

9   Catherine S. Ahn, and Brian Faerstein, and Department of Justice

10  Trial Attorney Christopher Fenton, hereby files this memorandum in

11  opposition to defendants Richard Ayvazyan and Marietta Terabelian's

12  motion to dismiss or for a pre-trial Kastigar hearing.   (ECF No.

13  381.)

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

2

1    This opposition is based upon the attached memorandum of points

2  and authorities and exhibits, the files and records in this case, and

3  such further evidence and argument as the Court may permit.

4   Dated: June 4, 2021                    Respectfully submitted,

5                                          TRACY L. WILKISON
                                           Acting United States Attorney
6
                                           SCOTT M. GARRINGER
7                                          Assistant United States Attorney
                                           Chief, Criminal Division
8

9
                                              /s/
10                                         _____
                                           SCOTT PAETTY
11                                         CATHERINE S. AHN
                                           BRIAN FAERSTEIN
                                           Assistant United States Attorneys
12
                                           CHRISTOPHER FENTON
13                                         Trial Attorney, Department of
                                           Justice
14

15                                         Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA
16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ..................................1

I.    INTRODUCTION .....................................................1

II.   ARGUMENT .........................................................1

      A.    The Court Should Deny the Defendants' Motion to
            Dismiss Pursuant to Rule 12(b) Because Defendants Do
            Not Allege Structural Error in the Grand Jury
            Proceedings ................................................1

      B.    Holding Any Portion of the <u>Kastigar</u> Inquiry Pre-trial
            Would Be Inefficient and Unworkable. ......................5

III.  CONCLUSION .......................................................9

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                            PAGE

**Federal Cases**

United States v. Allen,

530 U.S. 27 (2000) ............................................... 4

United States v. Bingham,

   653 F.3d 983 (9th Cir. 2011) .................................. 3

United States v. Carozza,

   608 Fed. Appx. 532 (9th Cir. 2015) ............................ 4

United States v. Connolly, 16-cr-0370,

   2019 WL 2120523 (May 2, 2019) ................................. 7

United States v. Dudden,

   65 F.3d 1461 (9th Cir. 1995) .................................. 6

United States v. Gallo,

   859 F.2d 1078 (2nd Cir. 1988) ................................. 7

United States v. Hubbell,

864 F.3d 63 (2nd Cir. 2017) ...................................... 4

United States v. Kaplan,

   554 F.2d 958 (9th Cir. 1977) .................................. 4

United States v. Montoya,

   45 F.3d 1286 (9th Cir. 1995) .................................. 5

United States v. Rogers,

   722 F.2d 557 (9th Cir. 1983) ............................... 6, 8

United States v. Serrano,

   870 F.2d 1 (9th Cir. 1989) .................................... 6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3       Relying on conjecture, hyperbole, and false claims that the

4   government has conceded indisputable facts, defendants now ask the

5   Court to bypass the Kastigar hearing they requested and instead

6   dismiss the indictment outright.  Alternatively, defendants ask the

7   Court to reconsider its prior decision to hold the Kastigar hearing

8   post-trial, and rearrange its schedule to continue the trial and hold

9   the Kastigar hearing beforehand.  Defendants base this request, in

10  part, on Fed. R. Crim. P. 12(b).  The Court should deny defendants'

11  motion in its entirety.  As set forth below, the Ninth Circuit has

12  held that dismissal is not the remedy for the sort of challenge that

13  defendants lodge pursuant to Fed. R. Crim. P. 12(b).  Moreover, given

14  the circumstances of this case, a pre-trial Kastigar hearing would be

15  inefficient and unworkable.

16

**II.   ARGUMENT**

17

18

   **A.   The Court Should Deny the Defendants' Motion to Dismiss
        Pursuant to Rule 12(b) Because Defendants Do Not Allege
        Structural Error in the Grand Jury Proceedings**

19      Having previously moved to dismiss the indictment on Kastigar

20  grounds (ECF No. 338), defendants have now filed another motion to

21  dismiss that repackages these same arguments, this time under the

22  ill-fitting guise of Fed. R. Crim. P. 12(b)(3)(A) (allegations

23  relating to a defect in the institution of the prosecution) and

24  12(b)(3)(B) (allegations relating to a defect in the indictment).

25  (ECF No. 381.)  The essence of defendants' motion is that the Court

26

27

28

1 should dismiss the indictment because the grand jury was exposed to

2 compelled information.[1]

3    Defendants' motion is based on speculation and unfounded

4 inferences, not facts.  For example, defendants claim they found

5 references in tainted evidence to 58 individuals and entities

6 associated with loans charged in the indictment and conclude "[t]he

7 grand jury [therefore] heard evidence and argument about each of

8 these 58 individuals or entities and that evidence and argument

9 violated the defendants' Fifth Amendment rights."  (ECF 381 at 6.)

10 The reality, however, is that defendants merely speculate about these

11 58 individuals and entities, and what evidence, if any, the

12 government presented to the grand jury about them.[2]  Similarly,

13 defendants infer that government investigators did not know about the

14 links between defendants and Iuliia Zhadko or Viktoria Kauichko until

15 after the border stop because these alter egos were not listed as

16 "known associates" in the FBI's request to CBP for secondary

17 screening.  (See, e.g., ECF 381 at 9-10.)  Defendants are wrong and

18 the government will address these and other facts necessary to carry

19 its burden at the Kastigar hearing when so ordered by the Court.[3]

20

21    [1] Defendants' brief does not identify the specific sub-section
of Rule 12(b)(3)(A) and (B) under which they proceed.  As to

22 subsection 12(b)(3)(A), the government construes the defendants'
motion as proceeding under 12(b)(3)(A)(v), which pertains to "an

23 error in the grand-jury proceeding."  As to Rule 12(b)(3)(B), none of
the prongs are applicable.

24    [2] Defendants' claim that they found "obvious" examples of
tainted evidence presented to the grand jury is similarly meritless.

25 (See ECF 381 at 7-8 (referencing Annandale Nursery, Camilo Amaya,
Lilia Turcan, Gevorg Boyrazyan, and Bayview Consulting).)  None of

26 these names are mentioned in the indictment.

27    [3] Defendants argue that "[i]f the indictment was untainted, the
government would respond to this motion with a declaration to the

28 Court, swearing under penalty of perjury that each of the above-
*(footnote cont'd on next page)*

2

1    Even if defendants' incorrectly assumed facts were true, it is

2  far from clear that the use of compelled testimony amounts to an

3  "error in the grand-jury proceeding" for the purposes of Rule

4  12(b)(3)(A)(v).  The defendants cite no cases that use this rule as a

5  vehicle to pursue a <u>Kastigar</u> violation and the fact that their

6  previous motion to dismiss on <u>Kastigar</u> grounds did not mention Rule

7  12 suggests that they did not hold this view when the issue was first

8  raised. (ECF No. 338.)

9    Furthermore, even if we assume for the sake of argument that a

10  <u>Kastigar</u> violation occurred (which it did not), and that the

11  violation amounts to an "error in the grand-jury proceeding" (which

12  it does not), pre-trial dismissal is not the appropriate remedy

13  because these errors would be cured with a conviction by the petit

14  jury.  In <u>United States v. Bingham</u>, the Ninth Circuit recognized that

15  non-structural defects in the grand jury process – specifically,

16  allegedly misleading statements in the grand jury presentation - are

17  harmless if followed by a conviction at trial:

18    [Defendant] claims that the government engaged in
    outrageous conduct during the grand jury proceedings and
19    that the district court erred in denying [his] motion to
    this effect.  The scope of our review is quite narrow,
20    because the petite jury convicted [the defendant] on all
    charges.  Thus, any error in the grand jury proceeding
21    connected with the charging decision is deemed harmless
    beyond a reasonable doubt.  After a conviction, only a
22    structural error that renders the grand jury proceedings
    fundamentally unfair may be corrected.  The only structural
23    errors the Supreme Court has recognized are racial and
    gender discrimination in the selection of the grand jurors.

24

25  referenced allegations was proven to the grand jury solely by
    untainted evidence. But the government will not provide that
26  declaration because it cannot." (ECF 381 at 6-7.)  Defendants are
    wrong.  The government declines to provide such a declaration because
27  doing so would be inconsistent with the Court's order (ECF 356),
    which has directed that the <u>Kastigar</u> hearing will be held after the
28  trial, not before, pursuant to a process set by the Court, not
    defendants.

1  653 F.3d 983, 998 (9th Cir. 2011) (internal quotations and

2  citations omitted).  Notably, in United States v. Carozza, which

3  held that "any misstatements by the DEA agents before the grand

4  jury were rendered harmless by the petit jury's guilty verdict,"

5  the Ninth Circuit made clear that the district court may rule on

6  a related motion to dismiss "before or after trial."  608 Fed.

7  Appx. 532, 536 (9th Cir. 2015); see also United States v.

8  Kaplan, 554 F.2d 958, 970 n.7 (9th Cir. 1977) (court may defer

9  ruling on dispositive motions).[4]

10      Because the defendants do not allege a structural defect in

11  the grand jury process, the harmless error standard applies to

12  their Rule 12 motion.  Dismissal of an indictment is an extreme

13  remedy and the government submits that it should be given the

14  opportunity to demonstrate, by convincing a petit jury to

15  convict, that the purported violations of which the defendants

16  complain are not prejudicial.

17      Moreover, pre-indictment dismissal makes little sense as a

18  matter of policy.  Although it is impossible to say with

19  certainty what steps the government would take in response to a

20  dismissal, given the strength of evidence against the

21  defendants, and the fact that the Court has already determined

22

23      [4] In United States v. Allen, the Second Circuit relied on United
    States v. Hubbell in holding that "harmless error review applies to
24  violations of non-structural constitutional rights, if the government
    has presented immunized testimony to the grand jury, the indictment
25  should be dismissed unless the government establishes that the grand
    jury would have indicted even absent that testimony."  864 F.3d 63,
26  99-100 (2d Cir. 2017) (reviewing evidence developed during a post-
    trial Kastigar hearing) (citing 530 U.S. 27 (2000)).  The defendants'
27  argument in Allen was presented as a Kastigar challenge, not a Rule
    12(b) challenge as the defendants do in the instant motion.  And
28  under Ninth Circuit precedent, conviction at trial would cure any
    non-structural error alleged under Rule 12(b).

1   that the United States had probable cause to conduct a premises

2   search without the offending information (ECF No. 296), re-

3   indictment on similar charges is a likely outcome.

4

5         **B.     Holding Any Portion of the <u>Kastigar</u> Inquiry Pre-trial Would Be Inefficient and Unworkable.**

6        On May 21, 2021, the Court determined that, given the

7   circumstances of this case, it made sense to defer resolution of

8   the defendants' <u>Kastigar</u> claims until after the trial: "[g]iven

9   the volume of evidence in this case, a pre-trial <u>Kastigar</u>

10  hearing may require the Court to make findings about evidence,

11  witness interviews, and prosecutorial decisions that ultimately

12  will have no bearing at trial."  (ECF No. 356 at 4.)  The

13  defendants' motion to reconsider this decision provides no

14  indication that any of the underlying circumstances have

15  changed.  Instead, they argue that litigating some aspects of

16  their <u>Kastigar</u> claims pre-trial would be tactically advantageous

17  to the defense and that the issue of whether the indictment was

18  "tainted" by compelled information should be resolved before

19  trial.[5]  (ECF No. 381 at 11.)

20       Whether, and how, to conduct a <u>Kastigar</u> hearing is left to the

21  discretion of the district court and a trial court's findings

22  regarding the "use" of compelled information will not be disturbed

23  absent clear error.  <u>United States v. Montoya</u>, 45 F.3d 1286, 1295

24  (9th Cir. 1995).  These deferential standards recognize that the most

25  _____

26      [5] As in prior submissions, defendant Richard Ayvazyan
    incorrectly states here that the government "conceded" facts and
    arguments that the government did not actually concede.  (<u>See, e.g.</u>,
27  ECF 381 at 11 ("Unlike cases in which non-evidentiary use is in
    question, here, the government has conceded such use under oath
28  ….").)  The government made no such concessions.

5

1   prudent way to proceed in Kastigar litigation depends on the unique

2   circumstances of the case at hand.  Given the dynamics of this case,

3   a pre-trial hearing on any aspect of the defendants' Kastigar

4   challenge would be inefficient and unworkable.  This is so for five

5   reasons.

6       First, a trial will clarify whether the government made the

7   "non-evidentiary" uses of the compelled statements, as

8   defendants allege.  Specifically, defendants indicate an

9   intention to explore whether the government used compelled

10  statements to "uncover other incriminating evidence, focus the

11  investigation, decide to initiate prosecution, interpret other

12  evidence, or otherwise plan trial strategy."  (ECF 381 at 13.)[6]

13  It stands to reason that, if the government used compelled

14  testimony to focus its investigation or plan trial strategy,

15  then these uses would manifest at trial, and could be

16  adjudicated at a post-trial hearing.

17      Second, even if there was pre-trial "use" of a compelled

18  statement, a trial will help clarify whether that use mattered.

19  Pretrial uses of compelled testimony, including use during a

20  grand jury presentation, are subject to a harmless error

21  analysis.  United States v. Rogers, 722 F.2d 557, 560 (9th Cir.

22

23      [6] The Ninth Circuit has not been entirely clear on the types of
    non-evidentiary uses of compelled information which are permitted.
24  Compare United States v. Dudden, 65 F.3d 1461, 1467 (9th Cir. 1995)
    ("The government may not use the statements to uncover other
25  incriminating evidence, focus the investigation, decide to initiate
    prosecution, interpret other evidence, or otherwise plan trial
26  strategy") with United States v. Serrano, 870 F.2d 1, 17-18 (9th Cir.
    1989) ("[W]e agree with the Second Circuit that a prosecution is not
27  foreclosed merely because the immunized testimony might have
    tangentially influenced the prosecutor's thought processes in
28  preparing the indictment and preparing for trial") (internal
    quotations omitted).

6

1  1983).  Because the objective of the Kastigar standard is to put

2  the defendant in the same position as he was in prior to

3  compulsion, courts evaluating pre-trial use of compelled

4  statements have looked to whether the violation impacted the

5  course of subsequent proceedings – including trial – in

6  evaluating whether to grant relief.  In United States v.

7  Connolly, for example, the Court concluded that evidence

8  compelled from the defendant through his employer was never used

9  in a way that necessitated dismissal of the indictment.  16-cr-

10  0370, 2019 WL 2120523 at *23 (May 2, 2019).  Importantly, the

11  court's analysis of this question explicitly relied on the

12  government's trial presentation: "the Court having sat through a

13  lengthy trial and reviewed the evidence on numerous occasions –

14  does not doubt that Black would have been indicted and convicted

15  even if [the defendant were not compelled to testify]."  Id.

16  Similarly, the concurrence in United States v. Gallo credited

17  the district court's observation that pretrial use of compelled

18  testimony did not impact the proceedings writ large in affirming

19  its ruling that use of the testimony in a wire tap application

20  did not justify dismissal of the indictment: "The district court

21  found that the use of Miron's testimony had 'no effect at all on

22  events'; that, instead, it was like 'a leaf dropping unobserved

23  in a deep forest' and Miron was 'left in precisely the same

24  position as if he had never testified.'"  859 F.2d 1078, 1091

25  (2d Cir. 1988) (Van Graafeiland, J., concurring).

26      Third, pretrial litigation of a Kastigar issue is

27  unworkable where, as here, defendants are challenging non-

28  evidentiary uses of compelled testimony such as making strategic

7

1 decisions and preparing for trial.  As this Court has already

2 recognized, any hearing held before trial will necessarily

3 involve a fluid record.  This is because the government's trial

4 preparation (and the strategic decisions attendant to trial

5 preparation) will continue up to and during any pre-trial

6 Kastigar hearing.  This issue is particularly acute given the

7 scope of the discovery sought by the defense.  (See ECF No. 353

8 (setting forth 10 discovery demands purportedly related to

9 Kastigar, including demands for privileged communications,

10 attorney work product, and secret grand jury materials).)  While

11 the government concedes no duty to produce the discovery that

12 defendants have requested, ongoing trial preparation efforts

13 will surely generate more of the types of documents that they

14 seek.  Discovery under these circumstances would be

15 unmanageable.

16      Fourth, the defendants' claim that a pretrial Kastigar

17 hearing will save them from having "to sit through a federal

18 criminal trial that may ultimately prove unnecessary" employs

19 wishful thinking.  Under the harmless error doctrine, a motion

20 to dismiss the indictment on Kastigar grounds should be

21 dismissed if the government shows that the grand jury heard

22 "adequate untainted evidence to support the indictment."

23 Rogers, 722 F.2d at 560.  The Court already found that a search

24 warrant for defendants' residence was supported by probable

25 cause after excising all references to the evidence obtained

26 during the border stop. (ECF 296 at 18-22.)  Specifically, the

27 Court found that, even without the evidence from the border

28 stop, "there was ample evidence linking Defendants to Zhadko and

8

1  Kauichko." (Id.) That search warrant was obtained on November

2  3, 2020, ten days before the case agents first accessed the

3  digital devices obtained during the border stop.  At the

4  Kastigar hearing, the government will show that the indictments

5  were not obtained based on tainted evidence.  However, even if

6  tainted evidence was presented to the grand jury, there is good

7  cause to believe that the other evidence presented to the grand

8  jury similarly amounted to probable cause such that there was

9  harmless error.[7] (See, e.g., ECF 310, 311.)

10      Finally, defendants' request for a continuance – despite

11  their prior insistence on proceeding expeditiously - is

12  infeasible.  Pandemic-related trial constraints substantially

13  limit the number of jury trials that may occur simultaneously in

14  order to protect public health and safety.  Defendants have no

15  constitutional right to a pretrial Kastigar hearing and should

16  not be permitted to disrupt the Central District of California's

17  trial calendar merely so that they may continue to multiply

18  pretrial proceedings.

19      Under these circumstances, even if Rule 12(b)(3)(A) or (B)

20  applies to defendants' Kastigar contentions, there is ample

21  "good cause to defer a ruling" until after trial.  Fed. R. Crim.

22  P. 12(d).  The Court should stand by its prior order and conduct

23  any necessary Kastigar proceedings after trial.

24  **III. CONCLUSION**

25      For the foregoing reasons, the government respectfully requests

26  that the Court deny defendants' motion in its entirety.

27

28      [7] Of course, if defendants are acquitted at trial, there would
    be no need for a Kastigar hearing at all.

9