Peter Johnson (State Bar No. 252542)
Email: peter@peterjohnsonlaw.com
Law Office of Peter Johnson
409 N. Pacific Coast Hwy, 651
Redondo Beach, California 90027
Telephone: (310) 295-1785
Facsimile: (866) 941-7715

Attorney for Defendant
VAHE DADYAN

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-579-SVW-8 |
| Plaintiff, | **DEFENDANT VAHE DADYAN'S SENTENCING MEMORANDUM** |
| v. | |
| VAHE DADYAN (Defendant #8) | **October 4, 2021** |
| Defendant | |

Defendant Vahe Dadyan, by and through his counsel, Peter Johnson, hereby respectfully submits the attached sentencing memorandum

DATED:  September 30, 2021          Respectfully submitted,

_____/s/_____
PETER JOHNSON
Attorney for Defendant VAHE DADYAN

i

1

# TABLE OF CONTENTS

2

I.     INTRODUCTION ...................................................................................................1

3

II.    THE FACTORS UNDER 18 U.S.C. § 3553(A) SUPPORT A SENTENCE
4      OF PROBATION THAT INCLUDES HOME CONFINEMENT ...................2

5      A.    The Nature and Circumstances of the Offense .......................................2

6          a.    The Mitigating Factors Regarding Mr. Vahe Dadyan's Role in the Offense Support a
                 Downward Variance. .........................................................................................3

7
           b.    Mr. Dadyan's Attempt to Plead Guilty to Count Seven (Wire Fraud) Supports a
8                Downward Variance. .........................................................................................4

9      B.    Mr. Dadyan's Personal History and Characteristics Support a Downward
             Variance from the Advisory Guideline Sentencing Range ...........................5

10
       C.    A Sentence of Probation that Includes Home Confinement Would Reflect the
11           Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment
             for the Offense, and Afford Adequate Deterrence to Criminal Conduct. .................6

12
       D.    A Sentence of Probation that Includes Home Confinement Would Address
13           the Need for a Sentence Imposed to Protect the Public from Further Crimes .........7

14     E.    A Sentence of Probation that Includes Home Confinement Will Address the
             Need for the Sentence Imposed to Provide Mr. Dadyan with Needed Medical Care
15           in the Most Effective Manner. .......................................................................8

16     F.    A Sentence of Probation that Includes Home Confinement Would Allow Mr.
             Dadyan to Continue Caring for His Elderly Mother and Two Young Boys..............8

17
           a.    Mr. Dadyan is the primary caregiver of his elderly mother. ..........................................8
18
           b.    Mr. Dadyan is actively involved in the lives of his two young boys...............................10
19
       G.    In Determining the Kinds of Sentences Available, Home Confinement is an
20           Available Sentence. .....................................................................................10

21     H.    A Sentence of Probation that Includes Home Confinement Would Avoid
             Sentencing Disparities .................................................................................10

22
       I.    The Court Should Reject the Government's Proposed Sentencing
23           Recommendation of 108 months. ................................................................11

24

III.   CONCLUSION ...................................................................................................12

25

26

27

28

**MEMORANDUM**

## I.    INTRODUCTION

Mr. Vahe Dadyan is a 42-year-old hard-working business owner, husband, and father of two young boys. He was born in Armenia and is a Naturalized Citizen of the United States. During the COVID-19 pandemic, Mr. Dadyan sought the help and guidance of his cousin to apply for a single government loan in the name of his business, Voyage Limo. Based on that application and the receipt of loan proceeds, the government indicted him. Before trial, Mr. Vahe Dadyan accepted responsibility for wire fraud related to the single loan. He signed a plea agreement. That agreement limited Mr. Dadyan's conduct to the single loan and the restitution to the amount of the loan - - $157,500.00. However, the Court rejected the plea. Mr. Dadyan went to trial and a jury found him guilty of wire fraud, bank fraud, money laundering, and conspiracy to commit each of these offenses.

Mr. Dadyan understands that the Court will sentence him in accordance with the jury's findings. As described more fully in the objections of the PSR (*See* Doc. # 992), the defense calculates an advisory guideline range of 37 to 46 months in prison, based upon an offense level of 21, and a criminal history category of I.[1] After considering the

---

[1] The guideline calculations of the parties and sentencing recommendations are vastly different. U.S. Probation calculates an advisory guideline range of 70 to 87 months in prison, based upon an offense level of 27 and a criminal history category of I. (Doc. #892). It recommends a downward variance and sentence of 60 months in prison, followed by three years of supervised release, a special assessment of $1,200, and restitution in the amount of $1,512,503. (Doc. #892). The government calculates an advisory guideline range of 108 to 135 months in prison, based upon an offense level

advisory guidelines, Mr. Dadyan respectfully requests the Court to weigh the factors under 18 U.S.C. § 3553(a) and find that a sentence of probation that includes home-confinement and community service is sufficient, but not greater than necessary, to comply with the goals of sentencing. Should the Court believe that a custodial sentence is warranted, undersigned counsel requests the Court to impose a sentence of no more than 15 months, the low end of the advisory guidelines had the Court accepted the plea agreement in this case.

## II.   THE FACTORS UNDER 18 U.S.C. § 3553(a) SUPPORT A SENTENCE OF PROBATION THAT INCLUDES HOME CONFINEMENT

A. <u>The Nature and Circumstances of the Offense</u>

On June 25, 2021, a jury found Mr. Dadyan guilty of Count One (conspiracy to commit wire fraud and bank fraud), Counts Seven through Twelve (wire fraud), Counts Eighteen through Twenty (bank fraud), Count Twenty-Six (conspiracy to commit money laundering) and Count Twenty-Seven (money laundering) of the First Superseding Indictment (FSI). (Doc. #644).  By its verdict, the jury found that Mr. Dadyan was involved in a scheme to submit fraudulent loan applications to obtain COVID-19 relief funds guaranteed by the Small Business Administration (SBA) under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

---

of 31 and a criminal history category of I. (Doc. #966) It recommends a sentence of 108 months in prison, followed by three years of supervised release, a special assessment of $1,200, and restitution in the amount of $10,704,188.13. (Doc. #999)

2

### a. *The Mitigating Factors Regarding Mr. Vahe Dadyan's Role in the Offense Support a Downward Variance.*

Mr. Dadyan's relative degree of culpability is the least among those involved in the offense. While the FSI alleged the scheme involved over 150 fraudulent loan applications, Mr. Dadyan was the only defendant in this case with a <u>single</u> PPP loan in his own name on behalf of his own pre-existing business, Voyage Limo. (FSI at Doc. #154, pg. 19-20, OA 37- 40).

Mr. Dadyan was not named in the original complaint or indictment. (Doc. #1, 32) Further, the original defendants were charged in almost every single count of the FSI. In contrast, Mr. Dadyan was named in only 5 of the 64 overt acts in Count One; he was not named in Counts 2-6 (wire fraud); he was not named in Counts 13-17 (bank fraud); he was not named in any of the Counts charging aggravated identity theft; and he was not named in Counts 28-32, which charged money laundering.

Mr. Dadyan's benefit was relatively small. While the FSI alleged that the scheme involved loan applications seeking over $21.9 million in COVID-19 relief funds, Mr. Dadyan benefited only from a portion of the loan proceeds directly related to the $157,500.00 PPP loan from Celtic Bank to Voyage Limo. He received $75,000.00 of those funds. He did not receive any other loan proceeds. No other PPP or EIDL loan proceeds flowed through his bank accounts.

The evidence at trial against Mr. Dadyan was limited to the one loan. In stark contrast to other co-defendants, the government presented no evidence of fraudulent or synthetic identities found in Mr. Dadyan's residence. The evidence also showed that

he was not involved in the application of any other PPP loans; he never applied for an EDIL loan; he did not steal or use fraudulent or synthetic identities; he was not involved in the transfer of any other loan proceeds; he did not design the scheme or set it into motion; he was not involved in the purchase of any luxury homes, gold coins, diamonds, jewelry, or luxury watches; and he was not involved in the opening or management of bank accounts in fictitious names. As distinguished from his co-defendants, all bank accounts connected to him -- Voyage Limo and V&D Limo --were registered to him and easily traced back to him through bank records and registration of companies with the State of California.

During the closing arguments, the government made it undeniably clear that Mr. Dadyan's role was limited to the one loan:

> Vahe Dadyan, yeah, he only had one loan, and that is true, and it's undeniable his role was limited. It was limited to that one loan, but the intent is the same.

Government Rebuttal, June 24, 2021 (Trans. at pg. 141, line 16-19). Under these circumstances a downward variance is appropriate.

### b. Mr. Dadyan's Attempt to Plead Guilty to Count Seven (Wire Fraud) Supports a Downward Variance.

On June 15, 2021, Mr. Dadyan attempted to plead guilty to Count Seven of the FSI. (Doc. # 652). Count Seven of the FSI charged him with engaging in wire fraud through the transfer of approximately $157,500 in PPP loan proceeds from Celtic Bank, sent by means of an interstate wire, into Voyage Limo Wells Fargo Bank, N.A. Account. (FSI at 30.) Mr. Dadyan signed the written plea agreement, accepted responsibility for

4

the conduct alleged in Count Seven, and requested that the Court accept his guilty plea. During questioning pursuant to Rule 11, Mr. Dadyan explained to the Court that, without his knowledge, his cousin, co-defendant Tamara Dadyan, inflated the number of employees and monthly payroll amounts to achieve a higher loan amount. The Court rejected the change of plea.

Mr. Dadyan's willingness to accept responsibility for his role in the offense should be a basis for a downward variance.

B. <u>Mr. Dadyan's Personal History and Characteristics Support a Downward Variance from the Advisory Guideline Sentencing Range</u>

Mr. Dadyan was born in Armenia. (PSR at ¶ 108) His family was very poor. During his childhood, the Soviet Union was collapsing, and the Armenian economy was failing. As a teenager, Mr. Dadyan would collect wood from under the snow, dry it out and cut it to provide for his family. (PSR at ¶ 108) This would allow his family a means to cook and to heat their home during times without heat and electricity. He believes this built character in him and helped him to develop a strong work ethic. (PSR at ¶ 108)

While in Armenia, Mr. Dadyan graduated high school and then joined the Armenian military. (PSR at ¶ 129).  He served honorably for two years as a Green Beret and Border Patrol agent. (PSR at ¶ 129).  While in the military, Mr. Dadyan attended Hippocrates Medical College in Armenia to obtain his dental technician certification. (PSR at ¶ 121).  After completing his military service, Mr. Dadyan worked as a dental technician before immigrating to the United States.

5

In 2005, Mr. Dadyan immigrated with his mother and father to the United States. (PSR at ¶ 110).   While living in the United States he worked a variety of jobs, mostly in the transportation and delivery industry. (PSR at ¶¶ 126-127)

In 2012, Mr. Dadyan married his wife. They have two young boys together, ages 7 and 4. (PSR at ¶ 111).  Mr. Dadyan stays actively involved in the care of his children while his wife is currently studying to be a nurse. (PSR at ¶ 115).

In 2015, Mr. Dadyan purchased Voyage Limo, a transportation company. (PSR at ¶ 125). During the COVID-19 pandemic (between March 2020 and March 2021), this business did not generate a profit. (PSR at ¶125)

Mr. Dadyan is currently the owner of two businesses that are not yet profitable – St. George Inc. Hospice and G&D Health, a home healthcare company. (PSR at ¶128) He dedicated approximately $32,000 of the PPP loan proceeds to the business expenses of G&D Health.

C.  <u>A Sentence of Probation that Includes Home Confinement Would Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence to Criminal Conduct.</u>

An extended term of imprisonment is not necessary.  Based on the facts and circumstances of this case, a term of probation that includes home confinement would be a deprivation of liberty that is reasonably related to Mr. Dadyan's role in the offense, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. *See e.g., Gall v. United States*, 552 U.S. 38 (2007)(Supreme Court affirming a sentence of probation

and emphasizing that although a sentence of probation is certainly less severe than imprisonment, "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.")

Should the Court believe that a custodial sentence is warranted to deter criminal conduct, undersigned counsel requests the Court to impose a sentence of no more than 15 months, the low end of the advisory guidelines had the Court accepted the plea agreement in this case. Such a sentence would be more than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct.

D. <u>A Sentence of Probation that Includes Home Confinement Would Address the Need for a Sentence Imposed to Protect the Public from Further Crimes</u>

When considering protection of the public, the Court should consider Mr. Dadyan's law-abiding conduct throughout his life, his compliance with pretrial release conditions, and other personal characteristics. Mr. Dadyan has followed the rules of his pretrial release conditions. He has not committed any new offenses. While two of his co-defendants have fled, Mr. Dadyan has demonstrated that he can comply with conditions of probation in the future. Mr. Dadyan is in Criminal History Category I, with only one prior offense when he was 26 years old for driving on a suspended license.

(PSR at ¶ 91) That offense resulting in only a fine. Additionally, Mr. Dadyan's age, educational level, and marital status make the likelihood of recidivism very low.[2]

    E. <u>A Sentence of Probation that Includes Home Confinement Will Address the Need for the Sentence Imposed to Provide Mr. Dadyan with Needed Medical Care in the Most Effective Manner.</u>

Mr. Dadyan was diagnosed with kidney stones in 2001 and is under a doctor's care for ongoing flare-ups. (PSR at ¶ 117) He was also diagnosed with high blood pressure in 2016 and is currently prescribed various medications. (PSR at ¶ 117) A sentence of probation that includes home confinement would allow him to maintain the care that he currently has with his doctor.

    F. <u>A Sentence of Probation that Includes Home Confinement Would Allow Mr. Dadyan to Continue Caring for His Elderly Mother and Two Young Boys.</u>

    *a. Mr. Dadyan is the primary caregiver of his elderly mother.*

Mr. Dadyan's parents are disabled and live in Van Nuys, California. (PSR at ¶ 105). Since 2016, Mr. Dadyan has been the primary caretaker of his elderly mother. (PSR at ¶ 113) Mr. Dadyan's mother suffered kidney failure in 2016 and underwent a kidney replacement in 2019. (PSR at ¶ 113)   Most recently, Mr. Dadyan's mother sustained a fracture in her thoracic spine which causes her a great deal of pain and limits her range of motion. (PSR at ¶ 113)  Mr. Dadyan provides daily care for his mother

[2] *See* United States Sentencing Commission, RECIDIVISM AMONG FEDERAL OFFENDERS: A COMPREHENSIVE OVERVIEW (March 2016) https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview

8

including ordering her medication on a monthly basis; administering daily medication up to twice daily; and cooperating with both her primary neurologist and the USC Transplant Clinic kidney department to ensure that her medication is changed based on her monthly lab reports. (PSR at ¶ 113)

Mr. Dadyan's father is unable to assist with the caretaking. Between 2015 and 2016, Mr. Dadyan's father suffered a stroke. He currently receives disability due to poor health. As a result, he has memory loss and constant trembling and tingling in his hands, and he is unable to help with his wife's care. (PSR at ¶ 113)

Mr. Dadyan's wife "admires how [Mr. Vahe Dadyan] takes care of his elderly parents on a daily basis, all while struggling with his own health issues." (PSR at ¶ 115) In a letter to the Court, Mr. Dadyan's sister explains in detail the necessity of Mr. Dadyan's care and presence in his mother's life.

> Your Honor, to maintain our mother's health is a tedious and constant process, that requires dedication and responsibility. Vahe takes her to Quest laboratory to draw blood monthly. Often times he has to take her back two more times depending on the results. USC Transplant Clinic monitors her creatinine and BUN levels closely and changes the immunosuppressants' dosage accordingly. Vahe follows-up with that, places a new dosage order for medication with the pharmacy and changes mother's pills accordingly. Because of the immunosuppressants mother has to be seen not only by her PCP, USC Transplant Clinic, primary nephrologist, but by a pulmonologist as well regularly. Even with Covid-19 restrictions she has to be there personally to be monitored as a high-risk patient. All these is scheduled and taken care of by Vahe. All her doctors know him by face and voice.

Exhibit B, Letter from Naira Dadyan.

*b.  Mr. Dadyan is actively involved in the lives of his two young boys.*

Mr. Dadyan is raising two young boys as his wife is pursuing a nursing degree. (PSR at ¶¶ 111, 112 and 115) During an interview with U.S. Probation, Mr. Dadyan's wife indicated that Mr. Dadyan "is a wonderful father and husband who has consistently supported her through her years as a nursing student, thereby allowing her to focus on her studies." (PSR at ¶ 115)  She also explained that Mr. Dadyan is the "glue that holds the family together." (PSR at ¶ 115) His wife has also prepared a letter in support of Mr. Dadyan, attached as Exhibit A.

G.  In Determining the Kinds of Sentences Available, Home Confinement is an Available Sentence.

Mr. Dadyan was not charged or found guilty of any mandatory minimum offense. Mr. Dadyan has lived in the Los Angeles area since arriving from Armenia. During the home confinement he can live with his wife and children in Glendale, California.  U.S. Probation has conducted a virtual home inspection at the Glendale residence and there were no weapons or officer safety issues identified (PSR at ¶ 114).

H.  A Sentence of Probation that Includes Home Confinement Would Avoid Sentencing Disparities

On September 27, 2021, the Court sentenced co-defendant Edvard Paronyan to 30 months in prison. Defendant Paronyan was far more culpable than Mr. Dadyan. For example, Defendant Paronyan applied for three (3) PPP and/or EDIL loans totaling $430,187.00. (Doc. # 469)  In comparison, Mr. Dadyan's role was limited to one loan in the amount of $157,500.00. Defendant Paronyan fraudulently misidentified the

company name and owner when applying for at least one of the loans. (Doc. # 469 at pg. 14)   In contrast, Mr. Vahe Dadyan used his own name, his own business, and his own home address on his single loan application. Finally, Defendant Paronyan had prior criminal history resulting in five (5) criminal history points. (Doc. # 963 at pg. 5)   Mr. Dadyan has zero criminal history points.  For Mr. Dadyan, a sentence of probation with home confinement or sentence of no more than 15 months in prison would avoid a sentencing disparity.

I.   The Court Should Reject the Government's Proposed Sentencing Recommendation of 108 months.

The government's sentencing recommendation of 108 months in prison is outrageous and directly conflicts with the purpose of 18 U.S.C. § 3553(a). That sentencing recommendation puts Vahe Dadyan at the same offense level as Defendant Tamara Dadyan,[3] one of the ringleaders, and higher than Defendant Manuk Grigorian[4] and Defendant Arman Hayrapetyan,[5] individuals that are far more culpable than Mr.

---

[3] On June 14, 2021, the government filed the executed plea agreement of Tamara Dadyan (Doc. #525) That plea agreement listed an offense level of 31 (*Id.* at pg. 21), the same offense level that the government is recommending for Vahe Dadyan, while also including in the statement of facts that Defendant Tamara is responsible for $18,016,141.26 in intended loss.

[4] On June 7, 2021, the government filed the executed plea agreement of Manuk Grigorian. (Doc. #436). That plea agreement listed an offense level of 25, six levels lower than Vahe Dadyan, while also including in the statement of facts that Defendant Grigorian is personally responsible for $3,398,282 in intended loss.

[5] On May 28, 2021, the government filed the executed plea agreement of Arman Hayrapetyan. (Doc. #377). That plea agreement listed an offense level of 24, seven levels lower than Vahe Dadyan, while also including in the statement of facts that Defendant Hayrapetyan is personally responsible for $1,323,887 in intended loss.

Dadyan. For example, Defendants Tamara Dadyan, Grigorian and Hayrapetyan were personally responsible for multiple PPP and EIDL loans resulting in millions of dollars in losses. Defendant Tamara Dadyan's plea agreement references $18,016,141.26 in fraudulent loan proceeds. (Doc. #525) Defendant Manuk Grigorian's plea agreement references $3,398,282 in fraudulent loan proceeds. (Doc. #436). And Defendant Arman Hayrapetyan's plea agreement references $1,323,887 in fraudulent loan proceeds. (Doc. #377). When comparing the charges in the FSI and the statement of facts in each of these plea agreements, the government's sentencing recommendation for Vahe Dadyan violates every sense of fairness that exist in federal sentencing. Therefore, it should be rejected.

## III.   CONCLUSION

For the above reasons, Mr. Vahe Dadyan respectfully request the Court to impose a sentence of probation that includes home confinement.   Should the Court believe that a custodial sentence is warranted, undersigned counsel requests the Court to impose a sentence of no more than 15 months, the low end of the guidelines had the Court accepted the plea agreement in this case.

DATED: September 30, 2021              Respectfully submitted,

                                      By: _____/s/_____
                                      PETER JOHNSON
                                      Attorney for Defendant Vahe Dadyan

**Exhibit A**

**Letter from Yelena Martirosyan, wife of Vahe Dadyan**

September 30, 2021

The Honorable Stephen V. Wilson
First Street Courthouse, 350 W. 1st Street,
Courtroom 10A, 10th Floor,
Los Angeles, California 90012

Dear Judge Wilson:

I met Vahe Dadyan in 2009 as a friend of my brother. We fell in love instantly and decided that we wanted to become a family. What made me fell in love with him was his upbringing; he was the most respectful, caring, and responsible person I had ever met. We have two beautiful sons together who love him dearly and unconditionally, not only because he is the father, but because he loves and gives them the attention, they need to feel loved and cared about. The bond and love between them is priceless, and I cannot enough how depressed and sad my sons will feel if they don't see him before they go to bed.

I have seen Vahe go through ups and downs in life, but the enthusiasm, positive attitude and hard work and conscientiousness that he has is infections and deserves admiration. He always tries to be the best son, husband, and a father for his family. I have known my husband for over 10 years, and I have never seen him disrespect, ignore or abandon his parents or his kids for even a day. Vahe is the only breadwinner in our household; thus, he is the only support our family have. He is not only a loyal son, but a husband, brother, and a friend. He is the holding glue of our family.

Recently he has been under tremendous stress not only due to his parents' health condition, but also his own, as he has to be seen and monitored by several specialists. He is struggling to make ends meet and all the stress made him very depressed and vulnerable. I am scared that all the stress and depression will make his health condition to worsen and leave me alone to raise our kids and meet ends meet. He has severe hypertension and kidney stones which combined makes his health condition a high risk; he needs constant monitoring and treatment.

Moreover, Vahe's mother, Lusik Chaparyan, has had health issues related to her hypertension and kidney disease which required her to undergo a kidney transplant surgery. Kidney transplant surgery is very high risk and requires constant hospital and

specialists' visits. Vahe's mother needs assistance every day as she is immunocompromised, and Vahe is the only person who is taking care of her. Vahe's mother raised him facing all the hardship of life she had during the Soviet Union collapse and, when she had kidney failure, Vahe was by her side all day as my sister in law and Iwere pregnant and couldn't dedicate the time she needed for all the procedures. Vahe was the one who was getting all the medications and still does. He takes her to doctors' visits a couple of times a month. Additionally, Vahe's mother health condition is very unstable, and she depends on Vahe's help and support. She doesn't have anyone else who can dedicate the time to take care of the doctors' appointments and/or getting a medication or taking her to do a simple bloodwork.

In conclusion, I would like to mention that the accusations that Vahe Dadyan used the money to afford luxury lifestyle are completely false. He did not buy expensive cars, houses and/or go on a fancy vacation with or without his family or friends. He did not buy any luxury brand clothing as stated in the paper. Moreover, he was helping soldiers with first aid kits, tourniquets, sleeping bags etc., He had friends who went to war in 2020 and he was doing his best to help them with anything he could.

Respectfully,

Yelena Martirosyan

# Exhibit B

# Letter from Naira Dadyan, sister of Vahe Dadyan

September 30, 2021

Honorable Stephen V. Wilson
First Street Courthouse,
350 W. 1st Street, Courtroom 10A, 10th Floor,
Los Angeles, California 90012

Dear Judge Wilson:

My name is Naira. I am Vahe Dadyan's younger sister. Your Honor, I wish I could introduce you my brother the way I know him: hard-working, loyal, trustworthy, and responsible, a man of great integrity and an absolute altruist.

In post-Soviet Armenia, weakened by war, immigrants who survived massacres and devastating earthquake, my brother became mature early. He had to balance between school, choreographic school, sports classes and helping our parents. Vahe helped our mother inside and outside of the house as our father had to work extra shifts, I was still too young and we always had somebody staying with us. Our parents set an example of caring people, taking foster kids in, sharing what little they had with anyone who would seek help from them. My brother started working since he was sixteen always giving his earnings to our mother.

Vahe has always been prudent and sensible even in his teens. I always had a warm welcome from all our teachers at school only because they knew I was Vahe's younger sister. So they expected me to be well-behaved and a good student like my brother. He has always been very protective of me since we were children. He still is. Even after I got married my brother supported me and my family when my husband was a student and I couldn't work. He worked on two jobs to sustain his family and to help us. He taught my daughter chess, he took her to extra-curricular activities, picked her up from school when needed.

He is an even better father for his children. He undertook most of household responsibilities and their children's care past three years as his wife became a medical student after earning her paralegal certificate from UCLA.

Vahe was there at the hospital day and night for a month when our mother had a kidney failure. He made sure she never missed any of her doctors' appointments which were innumerous, drove her for hemodialysis three times a week after was discharged from the hospital. Then he underwent a special medical training to perform peritoneal dialysis on our mother at home per doctor's recommendation. Vahe took our mother to several hospitals

throughout California for kidney transplant evaluation for years. And now after kidney transplant surgery he maintains her medical care, making sure her immunosuppressant medication dosage is accurate, her doctors' appointments are kept promptly, diet is according to her diagnosis, that of course if she hasn't been hospitalized for one reason or another.

Our mother and Vahe have a special bond. He's like her confidant. And now with her illness it seems that she trusts only him. For instance she wouldn't allow anyone but Vahe to put her weekly medication. If anyone says something she asks Vahe as if she wants to make sure the accuracy of what she was told.

Your Honor, to maintain our mother's health is a tedious and constant process, that requires dedication and responsibility. Vahe takes her to Quest laboratory to draw blood monthly. Often times he has to take her back two more times depending on the results. USC Transplant Clinic monitors her creatinine and BUN levels closely and changes the immunosuppressants' dosage accordingly. Vahe follows-up with that, places a new dosage order for medication with the pharmacy and changes mother's pills accordingly. Because of the immunosuppressants mother has to be seen not only by her PCP, USC Transplant Clinic, primary nephrologist, but by a pulmonologist as well regularly. Even with Covid-19 restrictions she has to be there personally to be monitored as a high-risk patient. All these is scheduled and taken care of by Vahe. All her doctors know him by face and voice.

In May of this year our mother's spine got fractured, that was followed by broken right ankle in July. The medications she takes deteriorate her bone density and muscles. She's still recovering. We haven't told her the gravity of the situation Vahe has been in past several months. Our mother has Alport syndrome which is a genetic disease. It has no cure, and the only way to slow the kidney failure is to keep the blood pressure stable. I am scared to even imagine what will happen to our mother in case if my brother is absent from her life even a short period of time. Her day starts by Vahe calling her for a good morning and ends with a call to wish her a good night, regardless how many hours he spent with her during the day.

Since the first day of Pandemic lockdown Vahe did all the grocery shopping for his family, mine and our parents'. He would leave groceries in front of our parents' door and my house minimizing our contact with the outside world to protect us. Since my husband is a respiratory therapist, in the first months of lockdown he had to work longer hours so Vahe helped us in any way he could.

My brother, Vahe supported US Veterans for years, "Food for America'' after the pandemic started. Ever since he immigrated to United Stated he supported "Armenia" fund, volunteered both in 2016 and last fall to organize help for Armenian soldiers during past two wars back in our homeland.

Your Honor, Vahe accepted help to fill out an application from someone whom he had no reason to doubt. I am sure that my brother never began with any criminal intent or any criminal inclinations.

Your Honor, we are a humble family, responsible and hard-working people. We have parents, who love us. My brother has children who wouldn't go to sleep unless their father reads to them. We celebrate Thanksgiving to express our gratitude to our Lord. We are human beings with faces, interests and goals. Vahe and all of us have mentally suffered immensely in the past several months because of this ordeal that we could never imagine we'd find ourselves in.

Your Honor, I beseech you to consider to give my brother and to all of us who loves him a chance to proof that Vahe Dadyan doesn't take the opportunity this great country offered him for granted, that he would never do anything deliberately to compromise his children's future and our parents' well-being, as our father survived a major stroke and our mother's life literally depends on Vahe's diligence. Please give my brother a chance to show his merits, to achieve his goals, to raise his children. My brother had plans to pursue his interrupted career in medical field after his wife's graduation.

Your Honor, please give my brother a chance!

Sincerely,

Naira Dadyan